COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Malveaux, Friedman and Lorish
Argued at Alexandria, Virginia


SCOTT A. ASALONE, A/K/A
  SCOTT ANTHONY ASALONE

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1452-23-4                JUDGE MARY BENNETT MALVEAUX
                                                          OCTOBER 22, 2024

COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                              James E. Plowman, Jr., Judge

              Jonathan P. Sheldon (Sheldon & Flood, PLC, on briefs), for
              appellant.

              Lindsay M. Brooker, Assistant Attorney General (Jason S. Miyares,
              Attorney General, on brief), for appellee.


        Scott A. Asalone ("appellant") entered an *Alford*[1] plea of guilty to carnal knowledge

without force of a child between 13 and 15 years of age, in violation of Code § 18.2-63.  The

trial court denied appellant's post-sentencing motion to withdraw that plea pursuant to Code

§ 19.2-296.  On appeal, appellant argues that such denial constitutes a manifest injustice, because

certain statements of the prosecutor "induced" him to enter the *Alford* plea.  For the following

reasons, we affirm the trial court's judgment.

---

        * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

        [1] *North Carolina v. Alford*, 400 U.S. 25 (1970); *see also Cellucci v. Commonwealth*, 77
Va. App. 36, 43 n.2 (2023) (en banc) ("When offering an *Alford* plea of guilty, a defendant
asserts his innocence but admits that sufficient evidence exists to convict him of the offense."
(quoting *Slusser v. Commonwealth*, 74 Va. App. 761, 766 n.2 (2022))).

# I. BACKGROUND

"On appeal, 'we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial.'" *Howell v. Commonwealth*, 60 Va. App. 737, 740 (2012) (quoting *Williams v. Commonwealth*, 49 Va. App. 439, 442 (2007) (en banc)).

In 2020, appellant was indicted for carnal knowledge without force of a child between 13 and 15 years of age, in violation of Code § 18.2-63, for acts that occurred in 1985. On the morning the trial was to start, defense counsel wrote in an email to the Commonwealth's attorney, Phillip Figura, that appellant was "thinking a bit more about the Alford plea" and asked whether the Commonwealth would "be willing to recommend probation." Figura responded: "I can't. But as I said, I would agree to continuing him on his current bond, and when it comes time to argue sentence, I would ask the judge for an appropriate sentence given the conduct." Figura immediately clarified in a separate email: "I generally don't ask for a specific amount of time, and I won't in this case. As such, you'll have free reign [sic] to ask for whatever you want." Defense counsel asked if Figura "agree[d] that the 1985 version of the guideline worksheet is applicable." Figura responded, "I'm not sure if it does or not honestly. I wouldn't oppose it. I think it will help inform the court."

That same day, appellant entered an *Alford* plea of guilty. The trial court conducted a plea colloquy, during which appellant confirmed that no one, including the Commonwealth's attorney, had "in any manner, threatened, forced, or coerced [him] into" entering that plea and that no promises had been made to him. Appellant also confirmed that he was aware of the potential punishment, knew the sentencing guidelines were merely a recommendation that the trial court was not bound to follow, and understood he was therefore "subject to the full range of punishment permitted by statute." He further indicated that he understood "that there are no

agreements as to the specific sentence that [he] might receive" and that the Commonwealth's position that he could remain out on bond was "not part of any agreement." Appellant confirmed he understood the trial court's questions and all his answers were truthful. The trial court found appellant's *Alford* plea had been "made knowingly, intelligently, and voluntarily," accepted the plea, and convicted appellant.

At the sentencing hearing on June 6, 2023, the trial court noted that the sentencing guidelines recommended probation without incarceration. Figura acknowledged this, but asserted that the guidelines "don't really reflect the wound that was inflicted here and the damage that was done to the people involved in the community" and recommended "the maximum sentence of 10 years."[2]

Defense counsel registered surprise at Figura's "extraordinary" sentencing recommendation. The *Alford* plea had been extended to appellant "very shortly before" trial, and the only contested issue at trial was going to be the age of the victim, rather than whether appellant committed the relevant acts. Counsel represented that appellant took the *Alford* plea for three reasons: counsel's "conversations" with Figura, appellant's desire "to accept his responsibility" for his actions, and appellant's wish that the victim not have to testify or be subject to cross-examination at trial.

Figura clarified that he had made his sentencing recommendation "on behalf of the Attorney General" and that "there was no plea agreement or anything like that."

The trial court did not think the sentencing guidelines were applicable, but noted appellant's mitigating evidence and the "positive direction" he had taken since 1985. The trial

---

[2] Figura noted that he made this recommendation with the understanding that appellant "would likely serve between a year and 8 months and four years and 8 months with mandatory release" due to his eligibility for parole, as the offense occurred prior to the abolition of parole effective January 1, 1995. *See* 1994 Va. Acts 2d Spec. Sess. chs. 1, 2.

court sentenced appellant to eight years of incarceration, plus three years of post-release supervision without probation.[3]

On June 15, 2023, appellant moved to withdraw his guilty plea pursuant to Code § 19.2-296. While noting that Figura's "statements were not part of an express plea agreement," appellant asserted that he had "relied" on those statements in deciding to enter an *Alford* plea. Appellant also proffered several exhibits relating to the defense he had abandoned, which alleged the victim was older than fifteen at the time of the offense.

At a hearing on the motion, defense counsel told the trial court that Figura's statement that he would refrain from making a recommendation was "just not part of any offer that was accepted in this case. The Commonwealth never suggested . . . it was going to be like a condition of the plea that they would not make a recommendation." Additionally, counsel had told appellant Figura's statements were "not part of any sort of an express plea agreement," and appellant's understanding to that effect was "consistent with" his plea colloquy answers. While maintaining that he was "not alleging a breach of a plea agreement," defense counsel argued that Code § 19.2-296's "manifest injustice" standard had been met because Figura's statements were "a significant part of the reason" why appellant decided to take the *Alford* plea.

Appellant testified that Figura's statements played a role in his decision to take the *Alford* plea, along with "some of the evidence that was out there," the sentencing guidelines, and the fact that he "thought it would save a lot of people a lot of heartache."

The trial court characterized the December 12, 2022 email exchange as merely "negotiat[ing] back and forth." It opined that Figura was communicating his "intention" that "there was not going to be a recommendation most likely," rather than asserting "that there was

---

[3] The court subsequently granted appellant's motion to reconsider including the period of post-release supervision in his sentence, and entered an amended sentencing order striking that provision.

an affirmative promise, or agreement, to not make a recommendation." The trial court found that appellant's argument to the contrary was not "supported by the plea colloquy." Taking into account appellant's testimony, as well as the record and the parties' pleadings, the court did not find a manifest injustice that would justify allowing appellant to withdraw his plea and denied appellant's motion.

This appeal followed.

## II. ANALYSIS

Appellant argues that the trial court abused its discretion and violated Code § 19.2-296 by denying his motion to withdraw his guilty plea.[4]

"We review a court's decision to deny a motion to withdraw a plea of guilty or *nolo contendere* under an abuse of discretion standard." *Spencer v. Commonwealth*, 68 Va. App. 183, 186 (2017). "[W]hether or not an accused should be allowed to withdraw a plea of guilty . . . is a

---

[4] Appellant also argues that the trial court's ruling deprived him of due process under the Virginia and federal Constitutions. That issue is not preserved for our review, because appellant did not raise it in the trial court. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."). The rule requires an objection that is "both *specific* and *timely*-so that the trial judge would know the particular point being made in time to do something about it." *Thomas v. Commonwealth*, 44 Va. App. 741, 750, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005). Integral to the specificity requirement is the grounds on which the objection is made. *Moison v. Commonwealth*, 302 Va. 417, 419 (2023) ("On appeal, though taking the same general position as in the trial court, an appellant may not rely on reasons which could have been but were not raised for the benefit of the lower court." (quoting *W. Alexandria Props., Inc. v. First Va. Mortg. & Real Estate Inv. Tr.*, 221 Va. 134, 138 (1980))); *Perry v. Commonwealth*, 58 Va. App. 655, 673 (2011) (holding that an appellant's objection to the introduction of certain statements on hearsay grounds did not preserve his Confrontation Clause argument related to those same statements). And "Rule 5A:18 applies to bar even constitutional claims." *Clark v. Commonwealth*, 78 Va. App. 726, 767 (2023) (quoting *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004)). Here, appellant's motion to withdraw his plea was based only on Code § 19.2-296's "manifest injustice" standard, not on any constitutional grounds. He also made no constitutional argument at the hearing on that motion. Additionally, appellant has not invoked the "good cause" or "ends of justice" exceptions to the rule, and "this Court does not raise those exceptions *sua sponte*." *Hicks v. Commonwealth*, 71 Va. App. 255, 269 n.6 (2019). Accordingly, we cannot consider appellant's due process argument.

matter that rests within the sound discretion of the trial court and is to be determined by the facts and circumstances of each case." *Howell*, 60 Va. App. at 745 (first alteration in original) (quoting *Parris v. Commonwealth*, 189 Va. 321, 324 (1949)). "In addition, '[t]he court's finding as to the credibility of witnesses and the weight of the evidence in support of a motion to withdraw a guilty plea will not be disturbed unless plainly wrong or without evidence to support it.'" *Id.* (alteration in original) (quoting *Jones v. Commonwealth*, 29 Va. App. 503, 512 (1999)). "[D]etermining whether a court erred in declining to allow withdrawal of a guilty plea 'requires an examination of the circumstances confronting [the] accused immediately prior to and at the time he [or she] pleaded to the charge.'" *Id.* (second and third alterations in original) (quoting *Jones*, 29 Va. App. at 512).

A trial court "by definition abuses its discretion when it makes an error of law." *Porter v. Commonwealth*, 276 Va. 203, 260 (2008) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)). There are

> "three principal ways" by which a court abuses its discretion: "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment."

*Lawlor v. Commonwealth*, 285 Va. 187, 213 (2013) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). "The court's ruling will be reversed 'only upon "clear evidence that [the decision] was not judicially sound."'" *Spencer*, 68 Va. App. at 186 (alteration in original) (quoting *Jefferson v. Commonwealth*, 27 Va. App. 477, 488 (1998)). In determining whether a lower court abused its discretion in denying a motion to withdraw a guilty plea, an appellate court considers "not only what the trial court may have told,

or failed to tell, the defendant before accepting his plea but also the events that occurred after acceptance of the plea and before sentencing." *Lilly v. Commonwealth*, 218 Va. 960, 963 (1978).

Code § 19.2-296 provides that a motion to withdraw a plea of guilty "may be made only before sentence is imposed or imposition of a sentence is suspended; but to correct manifest injustice, the court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea." There are separate standards governing a motion to withdraw a guilty plea, depending on the motion's timing. *Brown v. Commonwealth*, 297 Va. 295, 299 (2019). Under the "more forgiving" standard applicable to a motion made before sentencing, the motion "should be granted if the guilty plea was 'made involuntarily' or 'entered inadvisedly, if any reasonable ground is offered for going to the jury.'" *Id.* (quoting *Parris*, 189 Va. at 325). But relevant here, "[a] motion to withdraw a guilty plea made *after sentencing* is governed by [Code § 19.2-296's] 'manifest injustice' standard." *Id.* at 300. "This 'more severe standard is applied to avoid motions for withdrawal based on disappointment in the terms of the sentence imposed.'" *Velazquez v. Commonwealth*, 292 Va. 603, 616 (2016) (quoting *Lilly*, 218 Va. at 965).

A defendant has the burden of proving, upon his motion to withdraw his guilty plea, that a manifest injustice exists. *See id.* "Manifest injustice amounts to an obvious miscarriage of justice, such as an involuntary guilty plea or a plea based on a plea agreement that has been rescinded." *Howell*, 60 Va. App. at 746. "The term 'manifest' is defined as being 'synonymous with open, clear, visible, unmistakable, indubitable, indisputable, evident, and self-evident. In evidence, that which is clear and requires no proof; that which is notorious.'" *Velazquez*, 292 Va. at 616 (emphasis omitted) (quoting *Johnson v. Anis*, 284 Va. 462, 466 (2012)).

"'In examining a case for miscarriage of justice,' courts determine whether the record contains 'affirmative evidence of innocence or lack of a criminal offense.'" *Howell*, 60 Va. App. at 746-47 (quoting *Tooke v. Commonwealth*, 47 Va. App. 759, 765 (2006)). Additionally,

> [i]f, upon the whole record, it appears that the defendant, at any time before sentencing, was fairly warned or otherwise made aware that the court was not bound to follow the recommendation of the Commonwealth's Attorney, then the defendant is in no position to claim that his plea was rendered "unknowing and involuntary," resulting in manifest injustice.

*Lilly*, 218 Va. at 963-64. "[A] defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." *Howell*, 60 Va. App. at 747 (quoting *Tooke*, 47 Va. App. at 764).

Here, the trial court, Figura, and appellant were all aware there was no binding plea agreement. Appellant understood there were "no agreements as to the specific sentence" he might receive. Figura informed the court that there was no "specific agreement . . . as far as the disposition." Likewise, defense counsel told the court he was "not alleging a breach of a plea agreement." Defense counsel recognized that Figura "never suggested . . . it was going to be . . . a condition of the plea that [he] would not make a recommendation." Indeed, appellant's understanding that Figura's statements were "not part of any sort of an express plea agreement" was "consistent with" his plea colloquy answers. Appellant himself confirmed that nothing influenced his plea; it was his own plea colloquy answers, which he confirmed were truthful, that formed the basis for the trial court's accepting the plea as "knowingly, intelligently, and voluntarily" made. Accordingly, appellant has not carried his burden of demonstrating that a manifest injustice occurred. *See Velazquez*, 292 Va. at 617 (holding that an appellant failed to prove manifest injustice where his plea colloquy answers were truthful and he did not claim that

- 8 -

his plea was involuntary or that the trial court or the Commonwealth violated or rescinded a plea agreement).

The trial court did not abuse its discretion in denying appellant's motion to withdraw his *Alford* plea. The court found that defense counsel and Figura "negotiated back and forth" by email rather than exchanging promises and that Figura was communicating his current "intention" to not make a sentencing recommendation rather than committing to refrain from doing so in the future. Appellant claims this interpretation "ignores the context, circumstances, timing and implications of the prosecutor's negotiating." To the contrary, defense counsel informed the trial court of the context and the court weighed all the relevant circumstances including the close timing, content, and possible implications of the email exchange. The trial court also properly gave significant weight to the fact that both parties acknowledged there was no actual plea agreement or even an "affirmative promise . . . to not make a recommendation." The trial court also considered the circumstances surrounding the actual plea, including appellant's plea colloquy answers. Appellant's plea was voluntary,[5] and during the plea colloquy, he confirmed that he knew he was "subject to the full range of punishment permitted by statute"—in other words, he knew the court was not bound to follow any recommendation of the Commonwealth. The court also made appellant aware that the sentencing guidelines were

---

[5] We mention the voluntariness of appellant's plea only insofar as it relates to the manifest injustice standard as applied in *Brown*, *Howell*, and *Lilly*. While appellant argues on brief that his plea was "neither knowing nor voluntary," this issue was not preserved because appellant never objected to the trial court's finding that his plea was made "knowingly, intelligently, and voluntarily." *See* Rule 5A:18; *see also Thomas*, 44 Va. App. at 750. "If a party fails to timely and specifically object, he waives his argument on appeal." *Brittle v. Commonwealth*, 54 Va. App. 505, 512 (2009). Appellant's failure to object to that finding precludes our review of any argument that the finding was erroneous in and of itself. *See id.* at 520.

merely "a recommendation to the [c]ourt, but the [c]ourt doesn't have to follow them." Thus, we see no obvious miscarriage of justice in the record here.

Though appellant argues that he relied on Figura's statements in the December 12 email exchange, those statements were not the entire reason for his decision to take the *Alford* plea, but rather only "a significant part of the reason." Appellant's own testimony illuminates other reasons, including the Commonwealth's evidence, the sentencing guidelines, his desire to "accept his responsibility," and his motivation to save people, including the victim, the "heartache" that would be involved in a trial. The existence of multiple other reasons to take the *Alford* plea renders inapposite the assertion that Figura's statements "induced" the plea. The trial court made no error of judgment in weighing these other reasons against Figura's statements to determine their relative impacts on appellant's decision to take the plea, or in correctly concluding that no manifest injustice existed to justify permitting appellant to withdraw his plea.

Appellant relies on *Santobello v. New York*, 404 U.S. 257 (1971), in support of his argument that Figura's statements induced him to plead guilty, but that case is not applicable here. In *Santobello*, the United States Supreme Court vacated the defendant's conviction and remanded the case where the defendant "'bargained' and negotiated for a particular plea in order to secure dismissal of more serious charges, but also on condition that no sentence recommendation would be made by the prosecutor." 404 U.S. at 262. The Court held that, due to an inadvertent breach of the plea agreement that occurred when a different prosecutor asked for the maximum sentence where his predecessor had agreed to make no recommendation, "the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case." *Id.* The Court specifically noted that, initially, the prosecutor had made a "promise to abstain

from a recommendation" and "agreed to make no recommendation as to the sentence." *Id.* at 258, 262.

Appellant also relies on *Jones v. Commonwealth*, 217 Va. 248 (1976). In that case, though the parties had agreed the prosecutor would make a sentencing recommendation, the prosecutor did not do so "prior to the court's determination of what it considered proper punishment." 217 Va. at 255. Our Supreme Court held that the prosecutor's failure "to make a full disclosure of the[] plea bargaining agreement to the court" resulted in prejudice to the defendant, and reversed and remanded the lower court's sentencing judgment. *Id.* at 255, 257. Here, too, the Court highlighted the "overwhelming evidence" that the parties "had an agreement" in place with respect to the Commonwealth's recommendation. *Id.* at 255.

Here, in contrast to both *Santobello* and *Jones*, both Figura and appellant repeatedly confirmed that there was no formal plea agreement. Figura clarified at sentencing that "there was no plea agreement." Defense counsel noted that "whether there was going to be a recommendation" was neither "a condition of the plea" nor "part of any offer that was accepted." Though appellant specifically highlights Figura's statement, "I generally don't ask for a specific amount of time, and I won't in this case," the trial court found this to be merely a statement of Figura's "intention" rather than a commitment of any kind. Where, in *Jones*, the defendant's guilty plea "was induced by a prior plea bargaining agreement between his attorney and the Commonwealth's attorney," 217 Va. at 255, appellant here has conceded multiple times that no such agreement existed. The gravamen of the *Jones* holding was to protect "the integrity of the plea bargaining process," *id.* at 256 (quoting *Johnson v. Commonwealth*, 214 Va. 515, 518 (1974)), where a defendant "fully performed his part of the agreement" but the prosecution "fail[ed] to perform," *id.* at 257. That is not a concern here, because there was no plea agreement for either party to perform. And in *Santobello*, the appellant moved to withdraw his guilty plea

before sentencing. 404 U.S. at 258. Here, appellant moved to withdraw his plea after sentencing, where "the more stringent" standard applies. *Howell*, 60 Va. App. at 748. So neither *Santobello* nor *Jones* provide grounds for reversing the trial court's judgment in this case.

Appellant further argues he "abandoned" his "very strong defense to the element whether the victim was under the age of 15." This argument fails, for two reasons. First, even though appellant proffered several exhibits related to this defense, "a defendant who wishes to withdraw his guilty plea must do more than tender a defense." *Pritchett v. Commonwealth*, 61 Va. App. 777, 788 (2013). And while "lack of a criminal offense" is a relevant factor to consider when examining a case for miscarriage of justice, *Howell*, 60 Va. App. at 746-47 (quoting *Tooke*, 47 Va. App. at 765), a "manifest" injustice, in the evidentiary context, means something that "is clear and requires no proof," *Velazquez*, 292 Va. at 616 (emphasis omitted) (quoting *Johnson*, 284 Va. at 466). Appellant's proffer in and of itself suggests that there is no "manifest" injustice, as required by Code § 19.2-296, as no proof would be required if that were true. Second, even if appellant had "an affirmative defense that would have resulted in dismissal of the case," that "basis for withdrawal of a guilty plea . . . applies only before sentencing when a more liberal standard applies." *Howell*, 60 Va. App. at 747. Thus, we decline appellant's invitation to apply the pre-sentencing standard to his post-sentencing motion. *See id.* at 748.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*